IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**BAYOU LAWN & LANDSCAPE
SERVICES, et al.,**

    Plaintiffs,

v.                                                        Case No.: 3:12cv183/MCR/CJK

**HILDA SOLIS, et al.,**

    Defendants.

_____/

## **ORDER**

The plaintiffs in this case challenge certain rules issued by the Department of Labor ("DOL") governing the employment of temporary, non-agricultural foreign workers under the H-2B program on the grounds that DOL had no authority to issue the rules and that, even if DOL had rule making authority, the rules were issued in violation of the Administrative Procedure Act and Regulatory Flexibility Act.[1] The plaintiffs, all of which participate in the H-2B program or are comprised of members who participate in the program, have filed a motion for a temporary restraining order and preliminary injunction (doc. 2), seeking to enjoin DOL from enforcing the rules, which are scheduled to go into

---

[1] Under the H-2B program, which was established pursuant to the Immigration and Nationality Act of 1952 ("INA"), an employer may hire an individual "having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country . . . ." 8 U.S.C. § 1101(a)(15)(H)(ii)(b). The rules at issue in this case are set forth at 77 Fed. Reg. 10,038 (Feb. 21, 2012) and are designed to protect domestic workers; in so doing, they impose additional requirements and expense on employers participating in the H-2B program. In particular, the plaintiffs challenge rules that decrease the maximum number of months an employer may employ an H-2B worker from ten to nine; require employers to guarantee that H-2B employees will work at least seventy-five percent of the hours certified in any twelve-week period and, if not, pay the employees the difference for the time not worked; require employers to pay non-H-2B workers wages and benefits at least equal to those paid to H-2B employees if the two perform "substantially the same work;" require employers to pay for the round-trip airfare and subsistence costs of H-2B employees; and impose additional bureaucratic requirements, such as the filing of job orders, extensive domestic recruitment, and an application for a temporary labor certification.

effect on April 27, 2012.[2] The defendants, Hilda L. Solis, in her official capacity as United States Secretary of Labor, and Jane Oates, in her official capacity as United States Assistant Secretary of Labor (referred to collectively as "DOL"), oppose the plaintiffs' motion.[3] The court held a hearing on the plaintiffs' motion on April 24, 2012.[4] Based on the plaintiffs' complaint, as well as the parties' memoranda, submissions, and arguments, the court finds that a preliminary injunction prohibiting DOL from enforcing the challenged rules during the pendency of this matter should be issued to preserve the status quo.

At the hearing, both DOL and the proposed intervenors challenged the plaintiffs' standing.[5] The doctrine of standing requires a court to determine, as a threshold matter, whether a dispute presents a case or controversy that can be "appropriately resolved through the judicial process," as required under Article III, § 2 of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal marks omitted); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975). Article III standing has three requirements: (1) injury in fact to "'a legally protected interest'" that is "'(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;'"[6] (2) "'a causal connection between the injury and the conduct complained of'" that is fairly traceable to the defendants' action; and (3) a redressable injury. *Fla. Family Policy Council v. Freeman*,

---

[2] The plaintiffs include Bayou Lawn & Landscape Services; Chamber of Commerce of the United States of America; National Hispanic Landscape Alliance; Silvicultural Management Associates, Inc.; Professional Landcare Network; and Florida Forestry Association.

[3] Additionally, a number of parties have moved to intervene as defendants in this action. The motion to intervene remains pending.

[4] The parties presented argument only and no evidence. In addition to the plaintiffs and defendants, the court heard argument from the proposed intervenors.

[5] Unlike the proposed intervenors, DOL did not challenge the plaintiffs' standing in its response to the plaintiffs' motion.

[6] A plaintiff need not wait for an injury to occur, however. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003). "An allegation of future injury satisfies this prong of standing so long as the alleged injury is 'imminent' or 'real and immediate' and not merely 'conjectural' or 'hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560; *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). "An injury is imminent if it is likely to occur, and likely to do so immediately." *Id.* (citing *Lujan*, 504 U.S. at 560).

561 F.3d 1246, 1253 (11th Cir. 2009) (quoting *Lujan*, 504 U.S. at 560-61). The plaintiffs, as the parties invoking the court's jurisdiction in this matter, bear the burden to establish standing. *See Warth*, 422 U.S. at 518 ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."); *see also Amnesty Intern., USA v. Battle*, 559 F.3d 1170, 1177 (11th Cir. 2009); *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006).

In this case, there are both individual and associational plaintiffs. Each of the associations, except for Professional Landcare Network ("PLANET"), seeks to represent the rights of its members which have not been named as plaintiffs in this lawsuit; PLANET, however, asserts a claim in its own right as well as on behalf of its members. An association may have standing in its own right to seek judicial relief from injury to itself, and "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members."[7] *Warth*, 422 U.S. at 511. Accordingly, to demonstrate representational associational standing, an association must show (1) that its members would otherwise have standing to sue in their own right; (2) that the interests the association seeks to protect are germane to its purpose; and (3) that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343; *see also Warth*, 422 U.S. at 511. The first part of the test requires the association to "allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make a justiciable case had the members themselves brought suit." *Hunt*, 432 U.S. at 342

---

[7] "The modern doctrine of associational standing, under which an organization may sue to redress its members' injuries, even without a showing of injury to the association itself, emerges from a trilogy of cases," *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552 (1996), beginning with *Warth*, 422 U.S. at 511, which squarely recognized an organization's right to bring suit on behalf of its members depending on the nature of the claim and relief sought. The doctrine was refined into a clearly delineated thee-part test in *Hunt v. Wash. State Apple Adver. Com'n*, 432 U.S. 333, 343 (1977), and the Court reaffirmed those principles and permitted an association to challenge a pure question of law without the participation of its members in *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 287-90 (1986).

(quoting *Warth*, 422 U.S. at 511).

The court finds that both the individual and associational plaintiffs have pled facts sufficient to demonstrate their standing to bring the causes of action asserted in their complaint.  In particular, the court notes that each of the plaintiffs has alleged that it or its members participate in or rely on the H-2B program and will suffer immediate and irreparable injury to their business operations if the new rules are implemented.  The court also notes that the plaintiffs submitted a declaration from Sabeena Hickman, PLANET's Chief Executive Officer, in which Hickman testified regarding the manner in which PLANET's members rely on the H-2B program and the immediate and significant losses they will suffer in the event the challenged rules are implemented, including economic losses, loss of customers and goodwill, and, in some cases, the inability to remain in business.  The plaintiffs also submitted a declaration from James Allen, the owner and president of Bayou Lawn & Landscape Service ("Bayou Lawn"), in which Allen detailed Bayou Lawn's reliance on the H-2B program, as well as the loss of customers, goodwill, revenue, and expansion opportunities Bayou Lawn will suffer in the event the new rules are implemented.[8]  According to Allen, Bayou Lawn obtains many of its contracts through a bidding process and labor costs are among the most significant factors affecting the bid amount.  Although Allen states that the new rules create uncertainty about the costs associated with hiring H-2B workers, he also states that he is certain the costs will increase.  In order to compensate for the effects of the new rules, Allen testified that Bayou Lawn will have two options – it can either submit higher contract bids, in which case it will lose contracts, or opt not to pass on the additional costs, in which case it will lose money on the contracts it is awarded.  Either way, according to Allen, Bayou Lawn will be immediately and negatively impacted by the new rules, which ultimately could force it out of business.  Considering the allegations in the plaintiffs' complaint, as well as the declarations, the court finds that the plaintiffs have alleged facts adequate to satisfy

---

[8] The court notes the distinction between the manner in which Bayou Lawn is identified in the complaint and in Allen's declaration.

standing requirements.

Turning now to the plaintiffs' motion, in order to obtain a preliminary injunction, the plaintiffs must show that (1) they have a substantial likelihood of success on the merits of their claims; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to them outweighs whatever damage the proposed injunction may cause the defendants; and (4) if issued, the injunction will not be adverse to the public interest. *See Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.,* 557 F.3d 1177, 1198 (11th Cir. 2009). Because a preliminary injunction is an extraordinary and drastic remedy, the court may grant the plaintiffs' motion only if the plaintiffs clearly satisfy the burden of persuasion as to each of the four factors. *Id.* Indeed, "[f]ailure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." *Id.*

As to the first element – the likelihood that the plaintiffs will succeed on the merits of their claims – "[i]t is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *see American Library Ass'n v. F.C.C.*, 406 F.3d 689, 698 (D.C. Cir. 2005) (noting that a federal agency "'literally has no power to act . . . unless and until Congress confers power upon it'") (quoting *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986)). DOL acknowledges that it has no express Congressional grant of authority to engage in legislative rule making under the H-2B program and that such authority was vested instead in the Secretary of the Department of Homeland Security ("DHS"). DOL argues, however, that its authority can be inferred from three provisions of the INA; that DHS delegated rule making authority to it; and that Congress has acquiesced in its rule making. At least at this stage of the proceedings, the court is not persuaded by DOL's arguments. Specifically, there is no language in the statutory provisions upon which DOL relies from which the court can plainly infer legislative

rule making authority.[9]  Moreover, even if 8 U.S.C. § 1103(a)(6) conferred legislative rule making authority on DOL, DOL did not cite the statute as a source of its authority in the proposed or final rules and thus cannot rely on it now for that purpose.  *See* 5 U.S.C. § 553(b)(2) (requiring that notice of proposed rule making include, among other things, "reference to the legal authority under which the rule is proposed").  Indeed, in order to rely on the statute as a source of its authority to issue the rules in question, DOL would have to engage in additional notice and comment rule making.  *See id.*  In addition, neither the legislative history nor the case law cited by DOL is as clear as DOL suggests in terms of providing support for DOL's argument that it had authority to issue the subject rules *via* Congressional acquiescence.  Finally, contrary to DOL's assertions, at this point in time, the court cannot find any indication that Congress intended 8 U.S.C. § 1103(a)(6) as authorization for the Secretary of DHS to delegate its legislative rule making authority – to the Secretary of DOL or otherwise.[10]  Even if the Secretary of DHS were authorized to delegate its rule making authority under the H-2B program, DOL has not cited any support for the proposition that such a delegation in fact has occurred.  Unpersuaded by these arguments and finding no express grant of Congressional authority, the court finds that the plaintiffs have established a substantial likelihood of success on the merits of their claim that DOL lacks authority to promulgate the rules at issue in this case.

---

[9] In both the proposed rule and the final rule, DOL cited 8 U.S.C. §§ 1101(a)(15)(H)(ii)(b) and 1184(c)(1) as the statutory authority for its rule making.  *See* 76 Fed. Reg. 15,130 (March 18, 2011); 77 Fed. Reg. at 10,038, 10,043.  The first statute upon which DOL relied, 8 U.S.C. §1101(a)(15)(H)(ii)(b), defines an H-2B worker, as set forth above.  The other statute, 8 U.S.C. §1184(c)(1), directs the Secretary of DHS to consult with other government agencies when deciding whether to grant or deny an H-2B petition.  In response to the plaintiffs' motion, DOL cited 8 U.S.C. § 1103(a)(6) as an additional source of its alleged legislative rule making authority.  According to that statute, the Secretary of DHS may "confer or impose upon any employee of the United States, with the consent of the head of the Department or other independent establishment under whose jurisdiction the employee is serving, any of the powers, privileges, or duties conferred or imposed by this chapter or regulations issued thereunder upon officers or employees of the Service."  It apparently is DOL's position that both it and DHS have rule making authority under the H-2B program.

[10] The court notes that, under DOL's interpretation of the statute, the Secretary of DHS could confer legislative rule making authority upon any federal employee.

Case No: 3:12cv183/MCR/CJK

The court also finds, based on the declarations submitted by the plaintiffs, that the plaintiffs have demonstrated a substantial threat of irreparable harm. DOL does not dispute that the new rules will result in increased costs to the plaintiffs; rather, DOL argues that the plaintiffs will not immediately realize the effects of the new rules.  The plaintiffs, however, have demonstrated that the rules will have an immediate and significant impact on them, including their current bidding processes, and will result in lost revenue, customers, and/or goodwill.  "Although economic losses alone do not justify a preliminary injunction, the loss of customers and goodwill is an irreparable injury." *BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (internal marks omitted).  And, again, there is no dispute that the rules at issue apply to the plaintiffs and will make their participation in the program more expensive.

Turning to the third element, in order for an injunction to issue in this case, the plaintiffs must demonstrate that the threatened injury to them outweighs whatever damage the proposed injunction may cause DOL.  The court is aware that permanently enjoining enforcement of the new rules will have serious repercussions insofar as the H-2B program is concerned; notwithstanding, DOL has not articulated any harm it will suffer as a result of a mere delay in the implementation of the rules.

Finally, in order to issue the requested injunction, the court must find that the injunction would not be adverse to the public interest.  If DOL lacks the requisite Congressional authority to promulgate the rules at issue in this case, they will be rendered invalid and the public interest will be best served by enjoining their enforcement.  If not invalid, the injunction will only have delayed the rules' implementation.  It is not adverse to the public interest to enjoin enforcement of the rules for the limited purpose of preserving the status quo while the court makes a determination as to DOL's authority to issue the rules.  The court thus finds that the plaintiffs have satisfied all of the elements required for the issuance of a preliminary injunction and that an order prohibiting enforcement of the rules regarding "Temporary Non-Agricultural Employment of H-2B Aliens in the United States," as set forth at 77 Fed. Reg. 10,038, is appropriate.

Case No: 3:12cv183/MCR/CJK

Accordingly, it is hereby ORDERED that plaintiffs' motion for a preliminary injunction (doc. 2) is **GRANTED**.  The defendants are hereby enjoined from enforcing the subject rules pending the court's adjudication of the plaintiffs' claims.  The parties shall have sixty (60) days from the date of this order in which to file motions for summary judgment; they shall have an additional fourteen (14) days in which to respond to the opposing parties' motion.[11]

**DONE and ORDERED** on this 26th day of April, 2012.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS
CHIEF UNITED STATES DISTRICT JUDGE**

---

[11] The court is allowing the parties sixty days in which to file summary judgment motions because DOL must first prepare and file the administrative record.  In the event DOL does so expeditiously, the parties may jointly notify the court and request an expedited briefing schedule.