**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**BAYOU LAWN & LANDSCAPE
SERVICES, et al.,**

      **Plaintiffs,**

**v.**                                                                    **Case No.: 3:12cv183/MCR/CJK**

**HILDA SOLIS, et al.,**

      **Defendants.**

_____/

## ORDER

The plaintiffs in this case challenge rules issued by the Department of Labor ("DOL")[1] governing the employment of temporary, non-agricultural foreign workers by United States employers under the H-2B program on the grounds that DOL had no authority to issue the rules and that, even if DOL had rulemaking authority, the rules were issued in violation of the Administrative Procedure Act and Regulatory Flexibility Act.[2]  A number of parties have moved to intervene as defendants, arguing they are entitled to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2) because they have a legally protectable interest in this matter that may be impaired or impeded by the disposition of the action or, in the alternative, that they should be permitted to intervene under Fed. R. Civ.

---

[1] On April 26, 2012, the court entered a preliminary injunction enjoining the implementation of the rules.

[2] The plaintiffs include two businesses that participate in the H-2B program – Bayou Lawn & Landscape Services and Silvicultural Management Associates, Inc.– and four associations whose members participate in the program – Chamber of Commerce of the United States of America, National Hispanic Landscape Alliance, Professional Landcare Network, and Florida Forestry Association.

P. 24(b)(2) because the defenses they raise involve questions of law in common with the main action.[3]  The plaintiffs oppose the motion, insisting that the applicants have no legally cognizable interest in this matter, as required for intervention as of right under Rule 24(a)(2), and that, even if they did, the federal defendants will adequately represent their interests.  The plaintiffs also argue that the applicants' participation in this case will be disruptive and cause delay, and as a result they should not be permitted to intervene under Rule 24(b)(2). After careful review, the court finds that the applicants have failed to satisfy the requirements for intervention under Rule 24(a)(2) or Rule 24(b)(2) and therefore will deny their motion.[4]

**BACKGROUND**

The Immigration and Nationality Act of 1952 ("INA") established a comprehensive statutory framework for the regulation of immigration in this country.  *See* Immigration and Nationality Act of 1952 ("INA"), 66 Stat. 163, as amended, 8 U.S.C. § 1101, *et seq*.  Among other things, it included provisions for permanent and temporary foreign workers and provided a means through which such workers could enter the United States for employment purposes, as long as certain conditions were met.  Prior to 1986, a single program existed for all temporary foreign workers.  However, through the Immigration Reform and Control Act of 1986, Congress amended the INA and provided for two separate programs – the H-2A program applicable to agricultural workers and the H-2B program applicable to non-agricultural workers.  *See* Immigration Reform and Control Act of 1986, Pub. Law No. 99-603, § 301(a), 100 Stat. 3359, 3411 (codified at 8 U.S.C. § 1101(a)(15)(H)(ii)(a)).   Under the H-2B program, which is at issue in this case, an

---

[3] The applicants for intervention include Comité de Apoyo a Los Trabajadores Agrícolas ("CATA") and Pineros y Campesinos Unidos del Noroeste ("PCUN"), organizations that represent the interests of their U.S. and foreign worker members; Deborah Santana, a U.S. worker employed as a laundry attendant by a hotel in Orlando, Florida, that also employs H-2B workers; Maria Ramirez Hernandez, a U.S. worker who was formerly employed and intends to seek future employment as a housekeeper for Orlando hotels that employ H-2B workers; and Romulo Abuleche and Jahemel Abuleche, both of whom were H-2B workers in 2011 and purportedly intend to seek employment again in 2012.

[4] The plaintiffs also argue that the applicants have failed to demonstrate their prudential standing to participate in this lawsuit. The court finds it unnecessary to address this argument in light of its decision.

employer may hire an individual "having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country . . . ."[5]  *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b).

Congress vested authority for implementation of the INA's provisions in the Attorney General, but it directed the Attorney General to consult with other appropriate government agencies when considering applications for admission of H-2B workers.  *See* 8 U.S.C. § 1184(a)(1) and (c)(1).  Under the Homeland Security Act of 2002, Congress transferred enforcement of the immigration laws from the Attorney General to the Secretary of the Department of Homeland Security ("DHS").  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 402, 116 Stat. 2135, 2178 (2002).  Although DHS is charged with deciding whether to grant or deny applications for H-2B visas, it delegated to the Secretary of Labor the authority to "separately establish procedures for administering the temporary labor certification program under his or her jurisdiction."  8 C.F.R. § 214.2(h)(6)(iii)(D).  Before an employer may file a petition for an H-2B visa, DHS requires that the employer first apply for and receive a temporary labor certification from the Secretary of Labor.  8 C.F.R. § 214.2(h)(6)(iii)(A), (C).  The certification constitutes "advice . . . on whether or not United States workers capable of performing the temporary services or labor are available and whether or not the alien's employment will adversely affect the wages and working conditions of similarly employed United States workers."  8 C.F.R. § 214.2(h)(6)(iii)(A).

In 1968, DOL began publishing regulations establishing standards and procedures for certifying employers' requests to import H-2B workers.  *See* 33 Fed. Reg. 7,570-01 (May 22, 1968).  DOL supplemented the regulations with informal, non-binding guidance letters, including General Administration Letters ("GALs").  *See* 73 Fed. Reg. at 29,944. In 2008, DOL determined that modifications needed to be made to the H-2B program due to DOL's increased workload and the perceived difficulty and inefficiency of the program. *See* 73 Fed. Reg. at 29,944.  DOL thus issued a notice of proposed rulemaking on May

---

[5] The H-2B program derived its name from the subsection of the INA containing this definition.

22, 2008, setting forth a number of proposed procedural and regulatory changes. *See id.* After allowing a period of time for public comment, DOL published a final legislative ruling on December 19, 2008. *See* 73 Fed. Reg. 78,020-01, 78,029 (Dec. 19, 2008).

A number of parties filed suit on January 18, 2009, in the United States District Court for the Eastern District of Pennsylvania, challenging various aspects of the 2008 regulation, including the methodology for determining the prevailing wage rate to be paid to H-2B workers. *See Comité de Apoyo a los Trabajadores Agricolas, et al. v. Hilda Solis, et al.*, No. 2:09-cv-240-LP (Jan. 18, 2009) ("*CATA*"). On August 30, 2010, that court entered an order invalidating the 2008 wage rule. *See Comité de Apoyo a los Trabajadores Agricolas v. Solis*, No. 2:09-cv-240-LP, 2010 WL 3431761 (E.D. Pa. Aug. 30, 2010). Specifically, the court found that DOL never explained its reason for using the methodology it chose and that the methodology itself constituted a legislative rule subject to notice and comment under the APA. *Id.* at *19. The court remanded the rule, without vacatur, and ordered DOL to promulgate new, valid prevailing wage regulations within 120 days.[6] *Id.* at *27. On October 5, 2010, DOL published a notice of proposed rulemaking in which it proposed a new H-2B prevailing wage regime. *See* 75 Fed. Reg. 61,578 (Oct. 5, 2010). After receiving public comment on the proposal, DOL published a final rule on January 19, 2011, revising the methodology used to calculate H-2B prevailing wage rates. *See* 76 Fed. Reg. 3452-01. To allow employers sufficient time to plan for their labor needs and minimize disruption to their operations, DOL set January 1, 2012, as the effective date of the new wage rule. *See id.* at 3462. The *CATA* plaintiffs challenged the rule's effective date, arguing that DOL violated the APA and INA by imposing a delay of almost one year without engaging in notice and comment and in considering employer hardship as a basis for the delay. The court agreed and ordered DOL to issue a new effective date within forty-

---

[6] The court found that, while the magnitude of DOL's errors in passing prevailing wage rate regulations counseled in favor of vacatur, vacating the regulations would "remove the agency's default rule for calculating prevailing wages, resulting in a large gap in the prevailing wage regulations," which are "a central part of DOL's regulatory scheme and of vital interest to both H-2B workers and U.S. workers in the same industries." *See Comite de Apoyo*, 2010 WL 3431761, at *25.

five days, to be established through notice and comment rulemaking.  *See CATA v. Solis*, No. 2:09-cv-240-LP, 2011 WL 2414555, at *5 (E.D. Pa. June 16, 2011).  DOL complied with the court's order and, on August 1, 2011, set the effective date for the new H-2B prevailing wage rule as September 30, 2011.  *See* 76 Fed. Reg. 45667-01 (Aug. 1, 2011).

A number of parties filed suit in this court on September 21, 2011, seeking to enjoin DOL from enforcing the new wage rule, which they argue is invalid as result of DOL's lack of rulemaking authority and violations of the APA and RFA.[7]  *See Bayou Lawn & Landscape Servs. v. Solis*, No. 11cv445 (N.D. Fla. Nov. 23, 2011) ("*Bayou I*").  Because of the pending litigation – specifically, to "permit the various courts involved in the litigation to determine the appropriate venue for the resolution of all claims, and allow [DOL] to avoid the possibility of administering the H-2B program under potentially conflicting court orders" – DOL delayed the effective date of the new rule for sixty days.  *See* 76 Fed. Reg. 59,896-01, 59,896-97 (Sept. 28, 2011).  As a result, the rule was scheduled to go into effect on November 30, 2011.  On November 18, 2011, however, President Obama signed into law the Consolidated and Further Continuing Appropriations Act, 2012, which prohibited DOL from using appropriated funds to "implement, administer, or enforce, prior to January 1, 2012," the new wage rule.  *See* H.R. 2112, 112th Cong. (2011) (enacted), Public Law No. 112-55, Div. B, Title V, § 546 (Nov. 18, 2011).  Shortly thereafter, on December 23, 2011, President Obama signed into law the Consolidated Appropriations Act, 2012.  Among other things, the law prohibited DOL from using appropriated funds to implement the new wage rule during the 2012 fiscal year.  DOL thus issued a rule delaying the effective date of the rule until October 1, 2012.[8]

In February 2012, DOL issued revised H-2B regulations, significantly modifying the

---

[7] A nearly identical action was filed two weeks earlier in the United States District for the Western District of Louisiana.  *See The La. Forestry Ass'n, Inc. v. Solis*, No. 11-cv-1623 (W.D. La. Sept. 21, 2011) ("*La. Forestry Ass'n*").  That action was transferred to the Easter District of Pennsylvania.

[8] Because DOL delayed the effective date of the rule, the plaintiffs voluntarily withdrew their motion for a preliminary injunction.  The matter nevertheless remains pending, with summary judgment briefing scheduled to be completed before the rule goes into effect.

H-2B program ("2012 Program Rules").  *See* 77 Fed. Reg. 10,038-01 (Feb. 21, 2012).  The plaintiffs, three of which are plaintiffs in *Bayou I*, instituted this action challenging the 2012 Program Rules.[9]  Here, as in *Bayou I*, the plaintiffs challenge DOL's authority to promulgate the rules, as well as its compliance with the APA and RFA.   The applicants seek to intervene in the matter to "defend the critical protections to which they [claim they] are entitled" under the 2012 Program Rules.[10]  Specifically, the applicants claim that they are directly regulated and protected by the challenged regulations and thus have a substantial, legally protectable interest in the outcome of this matter.  They also argue that they have a legally protectable interest in orders entered in *CATA*, which they contend the plaintiffs collaterally attack in this action.  In the event the court finds that the applicants have no right to intervene in this case, the applicants urge the court to allow them to intervene permissively.[11]

## DISCUSSION

Pursuant to Fed. R. Civ. P. 24(a)(2), a party may intervene in an action when the party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the [party's] ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. 24(a)(2).  The Eleventh Circuit has interpreted the rule to require a party seeking to intervene as of right to demonstrate the following:

> (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his

---

[9] Bayou Lawn & Landscape Services, National Hispanic Landscape Alliance, and Professional Landcare Network are plaintiffs in *Bayou I*.

[10] Two of the applicants, PCUN and CATA, were plaintiffs in *CATA*.  PCUN, CATA, and two of the individual applicants, Romulo Abuleche and Jahemel Abuleche, also attempted to intervene in *Bayou I*.  The court denied their motion to intervene, along with their motion to dismiss or transfer the action to the Eastern District of Pennsylvania.

[11] Curiously, the applicants do not acknowledge, much less address, the court's order denying the motion to intervene in *Bayou I*.

ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

*Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004) (internal marks omitted).  In this case, there is no dispute that the application to intervene is timely, having been filed only three days after the lawsuit was filed; the first factor, therefore, is satisfied. Turning to the second factor, "[i]ntervention of right must be supported by [a] direct, substantial, legally protectable interest in the proceeding.  In essence, the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding." *Athens Lumber Co., Inc. v. Fed. Election Com'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) (internal marks and citations omitted).  In the Eleventh Circuit, "a legally protectable interest is something more than an economic interest."  *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (per curiam) (internal marks omitted).  "What is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant;" in other words, a "legally protectable interest is an interest that derives from a legal right."  *Id.*  (internal marks omitted).  To determine whether an applicant has a sufficient interest to intervene in a case as a matter of right, courts look to the subject matter of the complaint.  *Georgia v. United States Army Corps of Engineers*, 302 F.3d 1242, 1251 (11th Cir. 2002); *see also United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009) ("A court must carefully analyze whether the proposed intervenor's asserted interest really is bound up with the subject matter of the litigation."); *S. Fla. Water Mgmt. Dist.*, 922 F.2d at 707 (holding that to determine whether and to what extent a party has a legally protectable interest at stake, courts should look at the specific claims asserted in the plaintiff's complaint); *Wade v. Goldschmidt*, 673 F.2d 182, 184 (7th Cir. 1982) ("It is critical to the determination of the propriety of granting a motion to intervene for us to crystalize the relevant scope of the trial in which applicants seek to intervene.  Our review of an intervention order does not involve an examination of the theoretical interests of proposed intervenors that would justify the initiation or the defense of a lawsuit in appropriate circumstances.").

At issue in this case is whether DOL had authority to promulgate the 2012 Program Rules and whether it complied with the APA and RFA in the process.  Without question, the applicants do not have a legally protectable interest in either of those matters.  Indeed, given the nature of the plaintiffs' challenge, DOL is the only party with a legally protectable interest in this action.  *See, e.g., Wade*, 673 F.2d at 185 (noting that, in an action under the APA challenging a decision of the United States Department of Transportation, "[n]one of the actions taken, nor the statutory authority called into question in th[e] case, involves the proposed intervenors who seek to intervene as defendants" and holding that, "[i]n a suit . . . brought to require compliance with federal statutes regulating governmental projects, the governmental bodies charged with compliance can be the only defendants"); *Fl. Wildlife Fed'n, Inc. v. Johnson*, No. 4:08cv324, 2009 WL 248078, at *2 (N.D. Fla. Feb. 2, 2009) (finding that applicants for intervention had no legal right to participate in the adjudication of whether the Environmental Protection Agency performed a non-discretionary duty under the Clean Water Act); *see also Keith v. Daley*, 764 F.2d 1265, 1269 (7th Cir. 1985) (holding that state pro-life lobbying organization did not have sufficient interest to intervene in suit brought by a group of physicians who perform abortions challenging the constitutionality of an Illinois statute regulating abortion and that the government agents charged with defending and enforcing the state's laws were the only proper defendants); *NBD Bank, N.A. v. Bennett*, 159 F.R.D. 505, 506-07 (S.D. Ind. 1994) (finding that the Commissioner of Insurance was the only proper defendant in an action challenging the Commissioner's interpretation of the National Bank Act and denying motion to intervene by group of professional associations seeking to intervene, for economic reasons, to defend the Commissioner's interpretation of the statute despite the fact that the "decision in the underlying lawsuit may have a significant effect on petitioners' members' livelihoods"); *Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 912 (Alaska 2000) ("Generally when the government exercises its sovereign power to enforce and defend duly enacted laws, no other entity can have an interest sufficient to satisfy Civil Rule 24(a)").

The applicants' lack of a legally sufficient interest in the subject matter of this case

is underscored as well by the posture of the 2012 Program Rules.   The rules have not yet
been implemented and, depending on the disposition of this case, may never be
implemented, at least not by DOL in the foreseeable future.  The applicants have no legally
protectable interest in the validity of proposed, but not yet implemented, legislative rules.
Certainly they have no legally protectable interest in the implementation of invalid rules, the
question of which is central to this law suit.[12]   Essentially, the applicants claim an interest
in the *outcome* of this litigation; i.e. the wages and benefits the proposed rules will confer,
if implemented; however, an interest in the outcome of litigation is insufficient to support
intervention as of right under Rule 24(a)(2).[13]   *See Metro. St. Lewis Sewer Dist.*, 569 F.3d
at 840 (holding that interest in financial repercussions of government enforcement action
was "too tangential to the core issues . . . to establish a right to intervene"); *Patch*, 136 F.3d
at 205-06 ("This is not a case in which ongoing litigation directly threatens an economic
right or benefit presently enjoyed by any would-be intervenor.  It is, rather, a case in which
these would-be intervenors root their professed economic interest in an as yet unrealized
expectancy . . . .") (internal citation omitted); *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197,
205 (1st Cir. 1998) ("It is settled beyond peradventure  .  .  .  that an undifferentiated,
generalized interest in the outcome of an ongoing action is too porous a foundation on
which to premise intervention as of right."); *City of Stilwell, Okla. v. Ozarks Rural Elec. Co-
op. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996) (holding that a contingent financial interest
in the subject of a lawsuit "is too attenuated and does not satisfy the 'direct and substantial'
requirement of Rule 24(a)(2)"); *Wash. Elec. Co-op, Inc. v. Mass. Mun. Wholesale Elec.*

---

[12] In the event the court finds DOL lacks authority to promulgate legislative rules under the H-2B
program, as the plaintiffs aver, the rules will be void *ab initio*.  Because the rules have not yet been
implemented, the court also rejects the applicants' argument that they have a legally protectable interest in
this matter because they have a legal right to *enforce* the regulations through the filing an administrative
complaint with DOL or a legal action against their employers.  To the extent the applicants would have the
right to enforce the regulations, such right would not arise unless and until the rules are implemented.

[13] The court notes that only one of the individual applicants, Deborah Santana, is currently employed,
and it is not clear that she would benefit from the 2012 Program Rules, if implemented.  According to the
plaintiffs, because Santana has been continuously employed by her current employer for more than fifty-two
weeks, her wages and benefits may not be affected by the rules.

*Co.*, 922 F.2d 92, 97 (2d Cir. 1990) ("An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."); *Sierra Club v. Martin*, No. Civ. A. 1:96-CV-926, 1996 WL 452257, at *3-4 (N.D. Ga. June 17, 1997) (finding that a generalized economic interest that might be adversely affected by the outcome of the case and an interest in ensuring the proper interpretation of statutes governing an industry are insufficient to support intervention as of right).[14]

In addition to their alleged interest in wages and benefits stemming from the rules, the applicants argue that they have a right to intervene in this matter to protect orders entered in *CATA*.  This argument is equally unavailing.  The rules at issue in this case are entirely separate and distinct from those at issue in *CATA*, both procedurally and substantively.  To the extent the applicants argue that a finding by this court that DOL lacks legislative rulemaking authority under the H-2B program would conflict with the order in *CATA* directing DOL to engage in such rulemaking, the courts notes, as it did in *Bayou I*, that DOL's authority to issue legislative rules was not at issue in *CATA* and that the *CATA* court made no findings in that regard.   The applicants, therefore, have failed to demonstrate that the court's findings in this case could undermine those in *CATA*. Moreover, not only have they failed to identify any such potential conflict, but they possess no legal right to avoid such a conflict.  *See Train*, 71 F.R.D. at 393 (finding that one does

---

[14] Treating the rules as if they had been implemented, the applicants argue that they have an interest in the rules sufficient to support intervention as of right because they are directly governed by and/or are the intended beneficiaries of the rules.  The court disagrees.  As the plaintiffs point out, the 2012 Program Rules are designed to govern H-2B employers, not domestic or foreign workers.  Hence, in no event will the applicants be directly governed by the rules at issue.  *See Wade*, 673 F.2d at 186 n.6 (affirming denial of motion to intervene based in part on the lack of a legally protectable interest, noting that the court's disposition of the case would not "affect a statute or regulation governing the applicants' actions" or "directly alter contractual or other legally protectable rights of the proposed intervenors"); *see also Martin*, 1996 WL 452257, at *4 (noting that the proposed intervenors were not governed by the statutes at issue in that case).  Although the applicants might benefit from the rules in the event they are implemented, the applicants have cited no authority for the proposition that any party who may benefit from a regulation has the right to defend its validity. Indeed, in each of the cases the applicants cite, the proposed intervenors either had a separate legally protectable interest in the matter, which is not alleged here; were directly governed by the regulation at issue; or benefitted economically from it, which the Eleventh Circuit has found insufficient to support intervention under Rule 24(a)(2).

not "acquire an enforceable interest in a statute merely by having obtained a declaratory judgment construing that statute. . . . [To find otherwise] would mean that any time a party brought suit involving such regulations, [that party] could step in to defend the regulations, almost as if it, and not the Administrator, had promulgated them."). Rather, the Supreme Court has recognized the benefit of having multiple courts decide important questions of law, particularly in cases in which the government is a defendant. *See United States v. Mendoza*, 464 U.S. 154, 160 (1984). As the Court explained, allowing only one court to render a decision on any given issue "would substantially thwart the development of important questions of law by freezing the first final decision rendered . . . [and] would deprive th[e] Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari." *Id.* The court thus finds that the applicants have identified no legally protectable interest in this matter. *See Metro. St. Lewis*, 569 F.3d at 840 ("The purpose of intervention is to promote[ ] the efficient and orderly use of judicial resources by allowing persons, who might otherwise have to bring a lawsuit on their own to protect their interests or vindicate their rights, to join an ongoing lawsuit instead. Judicial efficiency is not promoted by allowing intervention by a party with no interest upon which it could seek judicial relief in a separate lawsuit.") (internal marks and citation omitted); *S. Fla. Water Mgmt. Dist.*, 922 F.2d at 710 n.3 ("Denial of intervention cannot impair a non-party's ability to protect its interests if that non-party would have no legal protection for those interests in any event.").

Notwithstanding, even if the applicants had a legally protectable interest in the matter, their interest is adequately represented by DOL. Contrary to the applicants' assertion, they and DOL have the same objective in this case – to defend the 2012 Program Rules. The court therefore presumes DOL will adequately represent the applicants' interests. *See Sierra Club v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007) (noting that the court presumes  adequate representation when an existing party seeks the same objectives as the proposed intervenors); *see also Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D. Ill. 1976) (finding that, although the Administrator of the

Environmental Protection Agency issued the challenged regulations only after being forced to do so, "once the regulations were passed, we should assume, in the absence of any showing to the contrary, that the Administrator and those acting on his behalf will ably defend the regulations which were, in fact, designed and promulgated by him").  Such presumption is rebuttable, however.  In the event the presumption is rebutted, "the court returns to the general rule that adequate representation exists if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed interven[o]r, and if the representative does not fail in fulfillment of his duty."  *Clark*, 168 F.3d at 461 (internal marks omitted).

In an effort to rebut the presumption of adequate representation in this case, the applicants argue that DOL seeks to protect the public's interest in the proper functioning of the H-2B program, rather than the interests of the workers who will benefit from the 2012 Program Rules, and that it therefore will be required to "balance the interests of both employers and workers involved in the H-2B program."  In so arguing, the applicants conflate DOL's interest in promulgating the rules with its interest in defending this action. While DOL may have promulgated the 2012 Program Rules at least in part for the reason proffered by the applicants, in this action, DOL seeks only to defend the validity of the rules and, in particular, its authority to issue the rules and the procedural soundness of the rules. DOL's interest in this action, therefore, is identical to that of the applicants.[15]  The applicants also suggest that they will be prejudiced if DOL defends this action in the same manner it has defended *Bayou I* and *La. Forestry Ass'n*, pointing to the fact that DOL has not requested security in those cases under Fed. R. Civ. P. 65(c); has not challenged the plaintiffs' associational standing; and, "instead of vigorously defending the challenged wage regulation," twice agreed to voluntarily postpone its effective date.  According to the applicants, they "simply cannot afford to wait until DOL potentially takes the same tack

---

[15] Contrary to the applicants' assertion, the substance of the rules is not at issue in this case.  The applicants' attempt to "defend[ ] the aspects of the regulations that directly regulate and/or benefit workers, and protect[ ] workers from the injury they will suffer if the Court enjoins the rules" thus is misplaced.

here." The applicants' argument is unconvincing for several reasons. First, while DOL has not requested security in this case, the applicants have not been prejudiced by DOL's failure in that regard.  Security under Rule 65(c) is intended to protect an enjoined party from any costs or damages it sustains in the event the injunction ultimately is determined to have been wrongfully issued.  DOL is the only party that has been enjoined in this case, and DOL has not alleged – and the court has not discerned – any costs or damages DOL has suffered or will suffer as result of the injunction.  Second, at the hearing on the plaintiffs' motion for a preliminary injunction, DOL did challenge the standing of the associational plaintiffs.  Finally, considering that the court has temporarily enjoined enforcement of the 2012 Program Rules pending a resolution of this matter, the applicants' concern about implementation delays is moot.  The applicants, therefore, have failed to rebut the presumption of adequate representation.

Not only have the applicants failed to rebut the presumption of adequate representation, but they also have failed to demonstrate that DOL's representation of their interests may be inadequate.  *See Clark*, 168 F.3d at 461 (noting that the "'requirement of the Rule is satisfied if the applicant shows that representation of his interest "may be" inadequate'") (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).  Although the applicants' burden in that regard is minimal, *see id.*, there is no indication in this case of any collusion between DOL and the plaintiffs or that DOL has an interest adverse to that of the applicants.  There also is no indication that DOL has failed to fulfill its duty in defending this matter.  To the contrary, DOL has defended the validity of the 2012 Program Rules in earnest, as evidenced by the fact that counsel for the applicants relied on DOL's argument at the hearing on the plaintiffs' motion for a preliminary injunction. Because the applicants have failed to demonstrate a legally protectable interest in this matter or that their interests will not be adequately represented by DOL, their motion

to intervene as of right must be denied.[16]

In the event they are denied intervention as of right, the applicants seek to intervene pursuant to Rule 24(b)(2).  "Permissive intervention under Fed. R. Civ. P. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties."  *Mt. Hawley*, 425 F.3d at 1312.  The court has broad discretion to decide a motion for permissive intervention.  *Id.* at 1312 n.7; *United States v. Dallas Cnty. Com'n, Dallas Cnty., Ala.*, 850 F.2d 1433, 1443 (11th Cir. 1988).  Again, the applicants seek to intervene in this matter to defend the validity of the 2012 Final Rules. Considering that the applicants did not promulgate the 2012 Final Rules, the court finds they are not the proper party to defend them.  *See Metro. St. Lewis Sewer Dist.*, 569 F.3d at 840; *Wade*, 673 F.2d at 185; *Keith*, 764 F.2d at 1269; *Johnson*, 2009 WL 248078, at *2; *Bennett*, 159 F.R.D. at 506-07; *Kritz*, 3 P.3d at 912; *see also Diamond v. Charles*, 476 U.S. 54, 65 (1986) ("Because the State alone is entitled to create a legal code, only the State has the kind of 'direct stake' identified in *Sierra Club v. Morton*, 405 U.S. [727,] 740 [(1972)], in defending the standards embodied in that code."); *Smith v. Fireside Thrift Co.*, No C 07-03883, 2007 WL 2729329, at *6 (N.D. Cal. Sept. 18, 2007) (citing *Diamond* for the proposition that individuals do not have standing to defend the constitutionality of statutes).[17]  Even if the applicants could properly defend the rules, the court finds that their

---

[16] Like the court in *NBD Bank, N.A. v. Bennett*, 159 F.R.D. 505, 507 (S.D. Ind. 1994), the undersigned is "mindful that its decision in the underlying lawsuit may have a significant effect on petitioners' members' livelihoods."  However, for the reasons stated above, such an effect is not sufficient to confer upon them a right to intervene in this action, particularly when the effect is economic at its core.

[17] The court acknowledges that "various circuits have recognized situations in which a private individual has standing to defend on appeal a law or regulation even though the government has acquiesced to a district court's determination of invalidity."  *Schulz v. Williams*, 44 F.3d 48, 52 (2d Cir. 1994).  The court would note, however, that not only are those cases distinguishable from the case at bar, "[b]ut all [of those] courts have stressed that when – as is the case here – 'a plaintiff's asserted injury arises from the . . . allegedly unlawful regulation of . . . *someone else*,' standing is "'substantially more difficult to establish.'""  *Laroque v. Holder*, 755 F. Supp. 2d 156, 168 (D.D.C. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)), *rev'd in part and vacated in part on other grounds*, 650 F.3d 777 (D.C. Cir. Jul. 8, 2011). In this case, it is employers of H-2B workers who are regulated, not U.S. or foreign workers themselves.

participation in this matter would cause (and, in fact, already has caused) undue delay. Indeed, this matter is currently stayed as a result of the applicants' appeal of the courts "effective denial" of their motion to intervene.  Moreover, the applicants have interjected additional issues in this matter, including the issue of security, to which they clearly are not entitled under Rule 65(c), and have sought dismissal of the plaintiffs' complaint or transfer to another district.  The court thus exercises its discretion to deny the applicants' motion to intervene under Rule 24(b)(2).   *See S. Fla. Water Mgmt. Dist.*, 922 F.2d at 711-12 (affirming district court's denial of permissive intervention because it would "'delay and prejudice the rights of the original parties' and 'make th[e] case even more unmanageable than it already appears to be' by adding witnesses and collateral issues"); *Athens Lumber Co., Inc. v. Fed. Election Comm'n*, 690 F.2d 1364, 1367 (11th Cir. 1982) (noting that "the introduction of additional parties inevitably delays proceedings").

ACCORDINGLY, the applicants' motion to intervene (doc. 16) is DENIED.[18]

**DONE AND ORDERED** this 11th day of June, 2012.


s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[18] The applicants have suggested that this court lacks jurisdiction to rule on the motion to intervene, in light of their appeal of the court's order granting a preliminary injunction, which was entered before the court had ruled on the motion to intervene, and therefore operated as a de facto denial of the motion to intervene and thus permitted an appeal of that order as well.  The undersigned disagrees and believes that the instant order, with its extensive rationale, will aid, rather than frustrate, the appeal.  *See Silverthorne v. Laird*, 460 F.2d 1175, (5th Cir. 1972) (holding that the district court did not err in issuing a written opinion setting forth the rationale for a previously entered order which had been appealed because the written opinion did not contradict the order and, instead amplified the district court's views, which was of "great aid" to the appellate court, allowing it to it to "examine the case with a thorough understanding of the lower court's posture"); ALLAN IDES, THE AUTHORITY OF A FEDERAL DISTRICT COURT TO PROCEED AFTER A NOTICE OF APPEAL HAS BEEN FILED, 143 F.R.D. 307 (1992) (noting that, after a notice of appeal has been filed, the district court is precluded from taking action that will alter the status of the case before the court of appeals but may take action to assist the court of appeals in its determination of the issues as long as such action will promote the efficient resolution of the appeal without altering the status of the case); *see also United States v. Vernier*, 152 Fed. Appx. 827, 834 (11th Cir. 2005) (holding that a district court's supplemental order detailing its rationale for an upward departure from the sentencing guidelines was "a permissible act in aid of appeal precisely because it facilitated, rather than interfered with the review of the appeal"); *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003) (holding that the filing of a notice of appeal "does not prevent the district court from taking action in furtherance of the appeal") (internal marks omitted).